# EXHIBIT B

FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
8/5/2016 3:58:27 PM
JAMIE SMITH
DISTRICT CLERK
B-198818

CAUSE NO. 198818

| | | |
|---|---|---|
| THE MEDICAL CENTER OF SOUTHEAST TEXAS, L.P. D/B/A MEDICAL CENTER OF SOUTHEAST TEXAS, SOUTHWEST GENERAL HOSPITAL, L.P. D/B/A SOUTHWEST GENERAL HOSPITAL, | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | JEFFERSON COUNTY, TEXAS |
| AETNA HEALTH, INC., | § § § | |
| Defendant. | § | 60th JUDICIAL DISTRICT |

## PLATINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs, THE MEDICAL CENTER OF SOUTHEAST TEXAS, L.P. d/b/a MEDICAL CENTER OF SOUTHEAST TEXAS, ("MCSET") and SOUTHWEST GENERAL HOSPITAL, L.P. d/b/a SOUTHWEST GENERAL HOPSITAL ("SWG") (collectively, the "Hospitals") complaining of AETNA HEALTH, INC. ("Aetna"), and for cause of action would respectfully show unto the Court and Jury as follows:

### INTRODUCTION

1. This matter involves Actna's intentional underpayment of the Hospital's claims for emergency services provided by the Hospitals to patients insured by Aetna. As the law requires, the Hospitals accept patients in need of emergency care irrespective of their insurance status or ability to pay. Where such patients are insured by Aetna, Aetna is required to compensate the Hospitals at the "usual and customary" rate for the emergency services provided, unless the Hospitals have agreed to accept a lesser "in-network" rate in exchange for access to Aetna's network. Tex. Ins. Code § 1271.155(a). With respect to the claims at issue in

this matter, the Hospitals are not "in-network" providers. Nonetheless, Aetna has blatantly and systematically disregarded the law in its dealings with the Hospitals by intentionally underpaying the Hospitals' claims for emergency services provided to those members by the Hospitals.

2. Aetna expressly excluded the Hospitals from its health insurance exchange plans ("HIX Network"). As such, no reduced or in-network discount applies with respect to services that the Hospital provided to Aetna HIX Network Members. All claims at issue in this case involve such out-of-network services.

3. Despite being excluded from the Aetna HIX Network, the Hospitals provided emergency medical services to Aetna HIX Network Members as required by law. The Hospitals then billed Aetna the usual and customary rate for those services. Aetna, however, refused to pay an amount in excess of $1.7 million for those services through July 1, 2016, an amount which continues to grow.

4. Aetna's illegal actions severely undercut the policy and system set up under the law to ensure Texans receive adequate access to and coverage for emergency medical care. Aetna essentially seeks to improperly shift the costs of emergency care to providers and policyholders in order to increase its profits.

5. The Hospitals have been significantly damaged by Aetna's illegal scheme. As a result, the Hospitals are entitled to an award in an amount of their damages as of the date of entry of final judgment in this action, statutory penalties under the Texas Prompt Payment Act ("TPPA"), attorneys' fees, prejudgment and post-judgment interest, and a declaration requiring Aetna to pay the Hospitals' billed charges for out-of-network Emergency Services provided to HIX Network Members going forward.

## PARTIES AND JURISDICTION

6. MCSET is a Texas-based limited partnership, which operates a 224-bed hospital with a principal address at 2555 Jimmy Johnson Blvd., Port Arthur, Texas 77640.

7. SWG is a Texas-based limited partnership, which operates a 327-bed hospital with a principal address at 7400 Barlite Boulevard, San Antonio, Texas 78224.

8. The Hospitals are subsidiaries of IASIS Healthcare Corporation.

9. Aetna and its group of subsidiary and affiliated companies are in the business of insuring and administering health insurance plans. As a result of issuing and administering health insurance policies, Aetna is obligated to pay for emergency services received by patients covered by Aetna's health plans and policies.

10. Upon information and belief, Aetna is a Texas corporation with its principal place of business in Dallas, Texas. It issues, administers, and makes benefit determinations related to health care plans through its various wholly-owned and controlled subsidiaries.

11. This Court has subject matter jurisdiction over this action because the claims arose in connection with services initiated within Texas.

12. This Court has personal jurisdiction over Aetna because Aetna is authorized to and conducts substantial business in Texas.

13. Venue is proper in this Court under Tex. Civ. Prac. & Rem. Code Ann. § 15.002 because a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Texas.

## **FACTUAL BACKGROUND**

### **Billed Charges**

14. The Hospitals charge for all services, supplies, and products used in providing treatment. The Hospitals maintain a uniform charge structure; every patient (or the person or entity responsible for paying for the patient's care) is charged identically for the same services. After a patient is released or discharged, the Hospitals generate a final bill for services provided. Private insurance, such as that offered by Aetna, provides many patients with coverage of some or all of the expenses for services received from the Hospitals.

15. If a patient is entitled to benefits under an insurance policy or health benefit plan, the Hospitals send the relevant insurance carrier a bill for their usual and customary charges for the services rendered to the patient. If the patient's insurance carrier does not have an agreement with the Hospitals with respect to the services provided, this is commonly referred to as an "out-of-network" situation, and the Hospitals expect payment of their charges, which reflect the usual and customary rates, without any discount ("Billed Charges").

### **Aetna's HIX Network**

16. Aetna offers multiple insurance products and maintains corresponding networks of Texas healthcare providers for those products. For each network, Aetna enters into contracts with various hospitals and other healthcare providers to establish agreed-upon rate structures. In exchange for discounting their rates and participating in Aetna networks, healthcare providers in these networks obtain increased patient volumes and other benefits as approved in-network providers.

17. Aetna sells insurance products to individuals that include access to a specific provider network as part of the contract of insurance between Aetna and the individuals. The

specific provider network included in an insurance product affects the premiums Aetna charges for that particular product. With limited exceptions required by law, Aetna's HMO insurance products generally do not provide coverage for the cost of non-emergency medical services received by a member from an out-of-network provider. Thus, to receive coverage for non-emergency services under their insurance agreements, HIX Network Members typically must obtain such services from in-network providers or else obtain prior authorization from Aetna to receive such services from out-of-network providers.

18. Aetna launched the HIX Network as a network for insurance products sold on the healthcare exchange to the previously uninsured or underinsured patient population.

19. Leading up to the launch of the HIX Network, Aetna invited healthcare providers to participate in the HIX Network by entering into a Network Participation Agreement.

20. In or about December 2013, Aetna sent the Hospitals letters that informed them that Aetna was excluding the Hospitals from its HIX Network. However, that letter informed the Hospitals that they were still in-network with respect to other Aetna products and stated that "if health insurance exchange members visit you for care, we'll cover them at the out-of-network benefit level."

21. As a result, neither of the Hospitals has been included as a participating provider in the HIX Network. Thus, the Hospitals are out-of-network providers for Aetna's HIX Network Members and have been since the network's creation.

22. Aetna has treated the Hospitals as out-of-network providers with respect to its HIX Network at all relevant times.

### Hospitals Provide Emergency Services in Accordance with the Law

23. Each day, the Hospitals treat hundreds of patients. Some patients are referred to the Hospitals by their physicians to receive inpatient and outpatient medical treatment. Other

patients enter the Hospitals through the Hospitals' emergency departments. Many patients report directly to the emergency department when experiencing a medical emergency, while others arrive by ambulance or by transfer from other medical facilities.

24. The Hospitals provide Emergency Services to all patients – regardless of their health insurance status or ability to pay – because the Hospitals are required to do so by law. Accordingly, the Hospitals must evaluate and provide stabilizing treatment to anyone who arrives at the Hospitals with an emergency medical condition.

25. The Hospitals are healthcare providers as that term is defined and understood under Texas law, and they are providers of "emergency care" as that term is defined in the Texas Insurance Code Tex. Ins. Code Ann. § 843.002(7).

26. The Hospitals provided (and continue to provide) emergency care in accordance with the appropriate standards of medical and/or healthcare. The emergency care that is provided to all patients seen by the Hospitals is provided in compliance with the law.

27. The Hospitals have provided emergency care to patients who were HIX Network Members. At the time the emergency care was provided to these patients, the Hospitals were out-of-network providers, meaning that the Hospitals did not have a written provider contract with Aetna by which the Hospitals and Aetna had agreed upon particular fee for service rates for the provision of emergency care to Aetna's HIX Network Members. The emergency care that was provided to these patients by the Hospitals was provided in accordance with the appropriate standards of medical and/or healthcare; and, in compliance with the requirements of the law.

28. Once the emergency care was provided to these patients, the Hospitals billed Aetna their Billed Charges for the emergency services that were provided by Hospitals.

### Aetna's Coverage of Out-of-Network
### Emergency Services for HIX Network Members

29. Aetna plans offering access to the HIX Network purportedly provide the same set of essential health benefits, quality, and amount of care, which include providing coverage for Emergency Services, irrespective of whether such services are provided by in-network or out-of-network providers. HIX Network Members are responsible for payment of the same co-payment, co-insurance, and/or deductible for receiving emergency care from an out-of-network provider as would be required if receiving such care from an in-network provider.

30. Under Texas law, an HMO "shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate." Tex. Ins. Code § 1271.155(a). Since there is no agreement between Aetna and the Hospitals concerning emergency care provided by the Hospitals to HIX Network Members, Aetna is required under Texas law to pay the Hospitals' usual and customary charges, which are the Hospitals' Billed Charges, for emergency services provided to HIX Network Members.

31. Because Aetna must provide coverage for the costs incurred by a HIX Network Member for emergency care services the member received from an out-of-network provider, Aetna must pay the Hospital for the care rendered. Since neither Hospital has agreed to accept discounted payments from Aetna in return for participation in the HIX Network, Aetna must pay the Hospitals their usual and customary billed charges for providing the care.

### Aetna's Unlawful Underpayment for Emergency Services

32. Since Aetna launched its HIX Network, Aetna has unilaterally, deceptively, and systematically underpaid the Hospitals' Billed Charges for Emergency Services provided to HIX Network Members by the Hospitals. Despite the fact that the Hospitals timely submitted clean claims for payment of Billed Charges related to these out-of-network emergency services, Aetna

failed to pay the full balance of these claims in violation of Texas law. Instead, Aetna underpaid the Hospitals for the full amount of the Billed Charges submitted during this time period.

33. Aetna's HIX Network Members have incurred significant charges for out-of-network emergency services. Despite Aetna's obligation to pay the Hospital's Billed Charges for Emergency Services provided to its members, Aetna has underpaid the Hospitals by no less than $1.7 million through July 1, 2016, and this amount continues to grow as the Hospitals continue to provide Emergency Services to HIX Network Members.

34. Despite the Hospital's timely and proper submission of clean claims, Aetna failed to contest the Hospital's claims within the applicable deadline, determine that the clean claims submitted by the Hospitals were payable at the rate of payment set forth by the Hospitals, and did not pay the Billed Charges submitted by the Hospitals according to the rate of payment set forth by the clean claims submitted by the Hospitals, as required by Texas law. Instead, Aetna unlawfully underpaid or failed to pay the Hospitals for the full amount of the Billed Charges, which reflected the usual and customary rate, submitted during this time period.

35. The Hospitals have notified Aetna of their expectation to be fully reimbursed for Billed Charges with respect to Services provided to HIX Network Members, and of Aetna's consistent underpayment. The Hospitals have also demanded that Aetna correct these underpayments by paying their Billed Charges.

36. As a consequences of Aetna's actions in violation of Texas law, the Hospitals suffered substantial damages.

## COUNT ONE
### (Violation of the Texas Prompt Payment Act)

37. The Hospitals restate and incorporate herein the allegations of Paragraphs 1 through 36 above.

38. Texas law requires prompt payment of claims submitted by out-of-network healthcare providers for services provided to the HMO's members. Tex. Ins. Code § 843.336 *et seq.*

39. HMOs that violate the prompt payment statute must pay a penalty to the healthcare provider. Tex. Ins. Code § 843.342. The statute provides a formula for calculating the penalty applicable when an HMO violates the statute by underpaying the healthcare provider.

40. The Texas prompt payment statute also entitles providers to recover attorneys' fees and costs associated with pursuing an HMO for violation of the statute. *See* Tex. Ins. Code § 843.343.

41. Aetna has violated the prompt payment statute continuously since the launch of the Compass Network by failing to fully pay the Hospitals' Billed Charges for Services provided to HIX Network Members.

42. The Hospitals are entitled to payment by Aetna for outstanding amounts owed for Billed Charges for all Emergency Services provided to HIX Network Members. The full amount of the underpayment will be established at trial.

43. The Hospitals also seek an award of the statutory penalty in an amount to be determined in accordance with the TPPA, attorneys' fees, costs, interest, and such other relief as may be just and proper.

## COUNT TWO
### (*Quantum Meruit*/Implied Contract/Unjust Enrichment)

44.     The Hospitals restate and incorporate herein the allegations of Paragraphs 1 through 43 above.

45.     *Quantum meruit* is an equitable remedy used by Texas courts to impose a contractual obligation on parties where an express contract does not otherwise exist.

46.     The measure of damages for a successful *quantum meruit* claim is the reasonable value of the services or materials provided.

47.     As out-of-network providers for Aetna's HIX Network, the Hospitals did not (and still do not) have an express contract with Aetna setting forth agreed reimbursement rates for HIX Network Members.

48.     The Hospitals provided valuable Emergency Services to HIX Network Members, thereby benefitting Aetna.

49.     Aetna acknowledged the Hospitals' expectation to be paid for such services.

50.     The nature of the relationship between the Hospitals and Aetna created implied contracts for Aetna to pay the Hospitals for the Emergency Services provided to HIX Network Members at the rate of the Hospital's Billed Charges, which constitute the usual and customary rate for the services provided.

51.     As described above and as to the Emergency Services, the Hospitals have established all elements for a cause of action for *quantum meruit*, implied contract, and/or unjust enrichment against Aetna. Both the Hospitals and Aetna were required to deal with one another. When presented with emergency patients, by direct admission or transfer from another healthcare provider, the Hospitals had no choice under EMTALA except to examine and provide stabilizing treatment to the patients, regardless of whether the patients were Aetna HIX Network

Members. Likewise, Aetna's contracts with these patients required Aetna to provide coverage for the expenses they incurred as a result of obtaining the Emergency Services, regardless of whether the services were rendered by an in-network provider or an out-of-network provider.

52. In the absence of an agreed-upon rate of reimbursement, Texas law requires HMOs, such as Aetna, to pay out-of-network healthcare providers, such as the Hospitals, for Emergency Services provided to the HMO's members "at the usual and customary rate." Tex. Ins. Code § 1271.155.

53. As defined by the Texas Administrative Code, the methodology for determining the usual and customary rate for out-of-network Emergency Services is based upon "generally accepted industry standards and practices for determining the customary billed charge for a service." 28 Tex. Admin. Code § 3.3725(f)(1).

54. The Hospitals' Billed Charges reflect the usual and customary rate for out-of-network Emergency Services, and the custom in the healthcare industry in Texas is to allow billed charges for out-of-network Emergency Services. Accordingly, the usual and customary rate of reimbursement for the Emergency Services at issue is the Hospitals' Billed Charges.

55. Aetna sets the premiums charged to members for its insurance products based on its custom and policy of allowing billed charges for out-of-network Emergency Services; it would be inequitable for Aetna to retain the benefit of these premiums, fail to provide coverage for Billed Charges, and then attempt to shift the responsibility to HIX Network Members to satisfy the unpaid balance of the hospital bill.

56. The failure of Aetna to reimburse the Hospitals for their Billed Charges for Emergency Services provided to out-of-network HIX Network Members constitutes a breach of an implied contract and has resulted in unjust enrichment to Aetna.

57. As of the filing of this Complaint, the failure of Aetna to pay amounts due under the implied contract with the Hospitals for Emergency Services provided to HIX Network Members has resulted in damages to the Hospitals by no less than than $1.7 million plus interest through July 1, 2016. The Hospitals' damages, however, continue to accumulate as the Hospitals continue to provide Emergency Services to HIX Network Members and Aetna continues to underpay the Hospitals for the claims associated with such emergency care. The full amount of the Hospitals' damages will be established at trial.

## COUNT THREE
### (Declaratory Judgment)

58. The Hospitals restate and incorporate herein the allegations of Paragraphs 1 through 57 above.

59. The Uniform Declaratory Judgment Act, as codified by Tex. Civ. Prac. & Rem. Code § 37.003, allows parties to seek relief in the form of a declaration of rights, status, and other legal relations.

60. The Hospitals seek relief for past damages caused by Aetna's failure to provide reimbursement for its HIX Network Members, which can be quantified. However, HIX Network Members will continue to require services from the Hospitals after final resolution of this dispute. As such, the Hospitals ask the Court to declare the parties' rights and obligations under the Hospitals' contracts implied-in-law.

61. The Hospitals request the following declarations based on construction of the authorities and relationship referenced in the foregoing paragraph:

    a. That Aetna must reimburse the Hospitals their Billed Charges for Emergency Services provided to HIX Network Members for whom the Hospitals do not have a contract with Aetna; and

b. That Aetna be prohibited going forward from paying the Hospitals at discounted rates agreed to in other, inapplicable contracts, rather than at the Billed Charges owed to the Hospitals for out-of-network Emergency Services provided to HIX Network Members.

## PRAYER FOR RELIEF AND DAMAGES

The Hospitals respectfully request the following relief:

1. An award of compensatory damages;

2. An award of a statutory penalties pursuant to Tex. Ins. Code § 843.342;

3. An award of attorneys' fees, costs, and discretionary costs;

4. An award of pre-judgment and post-judgment interest at the statutory rate for the amount of compensatory damages;

5. A determination that Aetna has violated the TPPA by underpaying the Hospitals with respect to Emergency Services;

6. A determination that Aetna owes the Hospitals for payment of Billed Charges for their provision of Emergency Services to HIX Network Members through the date of any final judgment entered in this action;

7. A declaration that Aetna shall re-process all claims at issue from the launch of Aetna's HIX Network through the date of Final Judgment for payment of the Hospitals' Billed Charges for Emergency Services;

8. Declaratory relief as set forth herein for all claims submitted to Aetna after the date of any final judgment in this action; and

9. All other and further relief to which the Hospitals may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and that after final trial hereon, Plaintiffs will be awarded a judgment against Defendant, as alleged and enumerated hereinabove, declaratory relief, and for such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

COOKSEY & MARCIN, PLLC

/s/ Curry Cooksey
Curry Cooksey
State Bar No. 04762400
ccooksey@cookseymarcinlaw.com
Christina Connor Huston
State Bar No. 45007043
chuston@cookseymarcinlaw.com
25511 Budde Road, Suite 2202
The Woodlands, Texas 77380
(281) 719-5881 (phone)
(281) 719-5847 (fax)


BASS BERRY & SIMS PLC
Matthew M. Curley
(*pro hac vice* application to be submitted)
Brittain W. Sexton
(*pro hac vice* application to be submitted)
150 Third Avenue South, Suite 2800
Nashville, Tennessee 37201
(615) 742-6200 (phone)
(615) 742-2868 (fax)

*Attorneys for Medical Center of Southeast Texas and Southwest General Hospital, L.P.*

16529198.6